**F. A. MIEKOW et al., Appellants,**

**v.**

**A. G. FAYKUS, Appellee.**

No. 6921.

Court of Civil Appeals of Texas.

Texarkana.

Dec. 6, 1956.

Rehearing Denied Dec. 27, 1956.

G. F. Steger, Columbus, for appellant.

Allen & Allen, Alton C. Allen, Hallettsville, for appellee.

FANNING, Justice.

This suit involves a written 10-year rice-farming lease contract on lands in Colorado County, Texas, dated March 1, 1947, wherein F. A. Miekow and W. H. Miekow were the landowners and A. G. Faykus was the rice farmer. (The contract also provided for an option for an additional 10-year period at a different yearly rental rate, 10%). The Miekows

filed the original suit as plaintiffs seeking to prevent Faykus from farming certain land in rice for the year 1955; Faykus filed a cross-action alleging two separate actions, one to reform a mutual mistake in the contract, and the other action being to recover damages.

The original action by plaintiffs for injunction to prevent Faykus from farming certain land in rice for the year 1955 is now moot and this matter is not involved in this appeal.

The parties had agreed that the yearly rental during the original 10-year period was to be ⅟₁₁ of the proceeds of the sales of rice, grown on the lands in question, but in writing the written contract the amount for the yearly rental during the 10-year period was erroneously written 11%. For eight years ⅟₁₁ rent was paid by Faykus and accepted by the Miekows. Soon after the discovery of this error in the written contract, Faykus filed his cross-action for correction of said mistake. The trial court found that a mutual mistake had been made and rendered judgment reforming such original 10-year contract in this connection. Plaintiffs have not appealed from this phase of the trial court's judgment.

In the second part of his cross-action, Faykus sued the Mickows for damages by reason of not receiving from them a rice allotment of 13 acres which was allocated to the Miekows by the United States Department of Agriculture by reason of the farming operations under the contract between Faykus and the Miekows, with the Miekows refusing to transfer said allotment to the farming operations in question but transferring said allotment to another of their farms farmed by another tenant. Faykus pleaded that it was the duty of the Mickows to transfer this rice allotment to the farming operations covered by their contract with him and relied upon this under an implied or quasi contract. The case was tried to the court without a jury. The trial court rendered judg-

ment in favor of Faykus and against the Miekows for damages in the amount of $1,715.06 on Faykus' cross-action No. 2. The Miekows have appealed from this judgment for damages against them.

The trial court filed findings of fact and conclusions of law. We quote from same as follows:

"3. Cross-Action Part Two.

"That the contract referred to executed between the parties on March 1, 1947, was the contract under which lessors and lessee operated under their rice farming agreement from the year 1947 through the year 1955, and that same was the only contract between the parties. Lessors were the land owners and lessee the rice farmer.

"From the evidence introduced with reference to the government rice allotment, the court finds the following:

"(a) There was a rice allotment controlled by the Department of Agriculture of the United States, which limited the amount of acreage that could be planted in rice during the year 1955, according to the Federal Regulations, in order to be eligible for price support. There was a penalty of 50 per cent of parity on the excess rice planted if a farmer planted in excess of this allotment. The Department of Agriculture in figuring the number of acres alloted to this farm or farming operations under this contract, figured the amount of acres farmed by this particular rice farmer on such farm over a period of the last preceding five years to get a historical average. As the rent was a percentage of the crop paid to the lessors, they allowed the lessors that percentage of the allotment. In this case, they allotted the lessors eleven per cent of the rice acreage allotment to the farm owned by lessors and farmed in rice by lessee, which amounted to 13 acres, more or less, to the lessors. The lessors allocated this

13 acres to another farm owned by them and not to the farm from which they received it which was being farmed by lessee. Insofar as the Federal Regulation was concerned, the lessors could transfer this 13 acre rice allotment to any farm they desired. Lessor, W. H. Miekow testified that he allocated the 13 acres which lessors received by reason of the land by lessee under the contract of March 1, 1947, to a farm owned by lessors and operated by Cook and Thomas, and that from this farm lessors received ten per cent of the crop as rent and that on the land lessee farmed in rice lessors had been receiving one-eleventh of the crop as rent.

"(b) The contract between the parties of March 1, 1947, does not provide for or mention the rice allotment. It does provide that lessee shall farm in rice each year whatever acreage the water well on said premises is capable of properly irrigating. That said water well was capable of irrigating the 148 acres lessee farmed in 1955 on lessors' land, and in addition thereto, the 13 acres allotted to lessors and by them allocated to another farm. The lessee farmed the allotment he received from this farm (lessors' farm), and could have easily farmed in addition thereto the 13 acres lessors received. That lessee fulfilled as far as he could by farming all of the land in rice such water well was capable of irrigating, without violating the allotment and having to pay a penalty, but that lessors did not as they allocated their rice allotment to another farm other than that from which they received it.

"(c) That by using the amount of rice made by lessee on this particular farm as a yard stick, and lessee's testimony that such 13 acres would have been farmed in rice adjoining such land, and from the other testimony in the case, it appears that had lessee been allowed to farm this 13 acres allotted to lessors by reason of the farming operations under the contract of lessors and lessee, that lessee would have made a profit of $1,715.06, after deducting the necessary expenses, and the one-eleventh part that lessors would be entitled to as rent.

"(d) The lessors, at the beginning of the 1955 farming operations, were notified that lessee desired to plant in rice for the year 1955, all of the rice allotment that was allotted to the farming operations under the contract of the parties, including that part received by lessors.

"(e) The lessors, under the contract of the parties, are to receive as rent one-eleventh of the amount of rice harvested; the Department of Agriculture allotted lessors one-eleventh of the rice allotment acreage allotted to the farming operations under the mutual contract of the lessee and lessors; and it is the conclusion of the court as a matter of law and equity that lessors are duty bound in good conscience, equity, an implied contract and a quasi contract to furnish one-eleventh of the rice allotment."

The written contract in question between the parties contains no express stipulation that it was the duty of appellants to transfer to appellee the rice allotment in question, nor does the contract refer to any U. S. Department of Agriculture regulations with reference to rice allotments on the farming operations in question. Obviously the reason for this is that such allotments and regulations were not in force or existence in 1947 when the contract in question was written, and obviously at such time such allotments and regulations were not foreseen or anticipated. Undoubtedly the primary purpose of the contract was for the successful growing of rice, consistent with good farming practices, and selling such rice at the best price available for the mutual benefit of the landlords

Miekow and the tenant Faykus. It is clear from this record that the rice allotments issued by the U. S. Department of Agriculture are very important to rice farmers in securing favorable prices for the rice they grow and it is clearly apparent from this record the considering the market prices for rice in the year 1955 that if Faykus had planted more rice that year than the allotment given him, he would have suffered severe financial penalties under the U. S. Department of Agriculture regulations as shown by the record. The record also clearly shows that the 13 acres allotment given the Miekows by the U. S. Department of Agriculture was on the basis of their portion of the rent from the rice lands they had leased to Faykus. By failing to transfer this allotment to Faykus, the Miekows deprived Faykus of the right to grow rice on this 13 acres without suffering a heavy financial penalty from the U. S. Department of Agriculture, which made the growing of rice on the 13 acres financially prohibitive. It is clear from the record that without this 13 acre allotment, Faykus could not have afforded to grow rice on such 13 acres and that for all practical purposes he was thereby prevented from growing rice on said 13 acres in the year 1955.

In Miller v. Miller, Tex.Civ.App., 292 S.W. 917, 918, wr. ref., it is stated:

"Contracts proper are either express or implied—the only difference between the two classes being in the character of proof required to establish them. The former arise from the oral or written language of the parties. In the latter, the intention of the parties is not expressed in language:

" 'But an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, when there are circumstances, which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.' 13 C.J. p. 241.

" 'Contracts implied in law, or, more properly, quasi or constructive contracts, are a class of obligation which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu. They rest solely on a legal fiction, and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity.' 13 C.J. p. 244 ".* (Emphasis added.)

In 12 Am.Jur., Sec. 7, p. 505, it is stated:

"Sec. 7. Coexistence of Express and Implied Agreements.

"There cannot be an express and an implied contract for the same thing existing at the same time. It is only when parties do not expressly agree that the law interposes and raises a promise. No agreement can be implied where there is an express one existing.

"The rule that a promise by implication does not exist where the party had made an express promise is not arbitrary and inflexible. The mere fact that the parties have attempted to make an express contract but have not succeeded in making it enforceable with respect to some of its terms does not prevent the implication of a promise to pay for benefits conferred thereunder. The generally recognized doctrine is that it does not follow from the fact that a contract is invalid because the minds of the parties did not meet as to some of the essential terms thereof, either because of a mutual mistake or uncertainty therein, that a party thereto who furnishes material or renders services to the other party, relying upon

*the terms as he understood them is without a remedy. In such a case a promise to pay the reasonable value of the materials or services is implied. \* \* \*"* (Emphasis added.)

In 12 Am.Jur. p. 502–503, it is stated:

"As has been well said, in the case of actual contracts the agreement defines the duty, while in the case of quasi contracts the duty defines the contract. A quasi contract has no reference to the intentions or expressions of the parties. The obligation is imposed despite, and frequently in frustration of, their intention. For a quasi contract neither promise nor privity, real or imagined, is necessary. *In quasi contracts the obligation arises, not from consent of the parties, as in the case of contracts, express or implied in fact, but from the law of natural immutable justice* and equity. \* \* \* Where a case shows that it is the duty of the defendant to pay, the law imputes to him a promise to fulfil that obligation. The duty, which thus forms the foundation of a quasi-contractual obligation, is frequently based on the doctrine of unjust enrichment." (Emphasis added.)

■ In 17 C.J.S., Contracts, § 6—Constructive or Quasi Contracts, pp. 322–323–324, it is stated:

"Contracts implied in law, or, as stated supra § 4, more properly quasi or constructive contracts, are a class of obligations which are imposed or created by law without regard to the assent of the party bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by an action ex contractu.

They rest solely on a legal fiction and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises not from consent, as in the case of true contracts, but from the law or natural equity. *Such contracts rest on the equitable principle that a person shall not be allowed· to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do. So, when the party to be bound is under a legal obligation to perform the duty from which his promise is inferred, the law may infer a promise even as against his intention."* (Emphasis added.)

We have carefully examined the trial court's findings of fact with reference to Faykus' cross-action for damages against the Miekows and find that there is ample evidence of probative force in the record to sufficiently support the trial court's findings in this respect. We further hold that such findings are not contrary to the overwhelming weight and preponderance of the evidence.

■ We agree with the trial court's conclusion that under law and equity the Miekows were duty bound in good conscience and equity to transfer or furnish the rice allotment in question to Faykus.

We hold that under the facts in this case the trial court rendered a correct judgment in favor of appellee.

Finding no reversible error in the record, the judgment of the trial court is affirmed.